RONALD OSBORNE, )
)
    Plaintiff, )
)
vs. ) No. 3:18-cv-00390
)
THE METROPOLITAN GOVERNMENT ) JUDGE TRAUGER
OF NASHVILLE AND DAVIDSON )
COUNTY, TENNESSEE, )
)
    Defendant. )

# RESPONSE
(In Opposition To Defendant's Second Motion To Dismiss)

Comes the Plaintiff pursuant to Local Rule 7.01(b) and respectfully submits this Response in opposition to Defendant's Second Motion to Dismiss (Document No. 16). In support of this Response, the Plaintiff would respectfully show to the Court as follows:

### FACTUAL AND PROCEDURAL BACKGROUND[1]

This case involves a private cause of action for double damages as provided in 42 U.S.C. § 1395y(b)(3)(A). As set out in the Complaint (Document No. 1) and Amended Complaint (Document No. 15), Mr. Osborne suffered an injury on the Defendant's property due to an unsafe condition. His injury required a surgical repair for a broken arm.

Mr. Osborne filed a lawsuit pursuant to the Tennessee Governmental Tort Liability Act in the Circuit Court for Davidson County, Tennessee. The case was styled ***Ronald***

---

[1] The factual and procedural background was previously set out in Plaintiff's Response to Defendant Metro's First Motion to Dismiss (Document No. 9), which is incorporated herein by reference. Plaintiff restates that factual and procedural background here for the convenience of the Court.

***Osborne and Tonnie Osborne v. The Metropolitan Government of Nashville and Davidson County***, Docket No. 15C-320. Mr. Osborne ultimately prevailed on this lawsuit, and the Defendant was determined to be responsible for Mr. Osborne's injuries and medical treatment.

However, because the Defendant had refused to take responsibility for Mr. Osborne's injury, conditional payments were made through Medicare for the treatment of his broken arm. These payment are "conditioned" on Medicare being reimbursed for these payments. See 42 U.S.C. § 1395y(b)(2).

The Defendant initially filed a motion to dismiss (Document No. 7) claiming that only Medicare can bring a statutory lawsuit asserting a claim for double damages. Although the Defendant had not raised the issue in its motion, Plaintiff filed an amended complaint (Document No. 15) to clearly set out his Article III standing to bring his claim. Following the filing of the amended complaint, the Defendant has filed the present motion again seeking to dismiss the Plaintiff's claim by asserting that only Medicare can bring such a claim.[2]

## LAW AND ARGUMENT

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." ***Golden v. City of Columbus***, 404 F.3d 950, 958-59 (6th Cir. 2005). Courts considering Rule 12(b)(6) motions must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. ***Fritz v. Charter Township of Comstock***, 592 F.3d 718, 722 (6th Cir. 2010) and ***Dubay v. Wells***, 506 F.3d 422, 427 (6th Cir. 2007).

---

[2] The Defendant has not challenged Mr. Osborne's Article III standing in its motion. It is only claiming that the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), does not authorize anyone except Medicare to bring a claim against a liability insurance carrier or self-insured entity.

"Although the factual allegations in a complaint need not be detailed, they 'must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.'" **Lambert v. Hartman**, 517 F. 3d 433, 439 (6th Cir. 2008)(quoting **League of United Latin Am. Citizens v. Bredesen**, 500 F.3d 523, 527 (6th Cir. 2007). See also **Fritz** at 722.

**Standing of Medicare Beneficiaries to use Private Right of Action**

The Medicare Secondary Payer Act ("MSPA"), codified at 42 U.S.C. § 1395y(b) was an effort by Congress to help defray the rising cost of the Medicare program. **Stalley v. Methodist Healthcare**, 517 F.3d 911, 915 (6th Cir. 2008). The primary purpose of the MSPA was to make Medicare secondary to other types of insurance. **Id**. Part of the MSPA specifically authorizes the Federal Government to initiate collection of payments made by Medicare where another entity has primary responsibility for payment of those medical costs. **Id**. See also 42 U.S.C. § 1395y(b)(2)(B)(iii).

42 U.S.C. § 1395y(b)(2)(B)(iii) states:

(iii) Action by United States

In order to recover payment made under this subchapter for an item or service, <u>the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a **_primary plan_**</u>. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or

group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed. (Emphasis added).

The term "primary plan" is defined in 42 U.S.C. § 1395y(b)(2)(A)(ii):

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. *An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part*. (Emphasis added).

Furthermore, 42 CFR § 411.50(b) includes governmental entities within the class of entities that are deemed self-insured plans. That regulation states in part, "Self-insured plan means a plan under which an individual, or a private or **governmental entity**, carries its own risk instead of taking out insurance with a carrier." (Emphasis added).

More importantly, for the purposes of this case, a second part of the MSPA, § 1395y(b)(3)(A), permits a private party to pursue a "private right of action" against a primary payer. "'The MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights.'" **Stalley** at 916 (quoting **Glover v. Liggett Group, Inc.**, 459 F.3d 1304, 1307 (11th Cir. 2006). While this might appear to render the MSPA a *qui tam* statute, courts deciding this issue have consistently ruled that it is not. *Id*. at 919.

42 U.S.C. § 1395y(b)(3)(A) states:

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary

plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

Notwithstanding, the *dicta* cited to and relied upon in ***Bio-Medical Applications v. Central States Health***, 656 F.3d 277 (6th Cir. 2011) by the Defendant in its Motion to Dismiss, the MSPA permits a private person or entity to bring a claim under § 1395y(b)(3)(A). Every Federal Circuit that has decided this issue has come to this conclusion. See ***Manning v. Utils. Mut. Ins. Co., Inc.***, 254 F.3d 387, 392 (2nd Cir. 2001);[3] ***In re Avandia Marketing***, 685 F.3d 353, 359 (3rd Cir. 2012);[4] ***Caldera v. Insurance Co. of the State of Pa.***, 716 F.3d 861, 863 (5th Cir. 2013); ***Michigan Spine & Brain Surgeons, PLLC v. State Farm***, 758 F.3d 787, 793 (6th Cir. 2014); ***Stalley v. Catholic Health Initiatives***, 509 F.3d 517, 524 (8th Cir. 2007);[5] ***Parra v. PacifiCare of Arizona, Inc.***, 715

---

[3] ***Manning*** involved a direct suit by a Medicare Beneficiary against a primary payer, in that case a worker's compensation insurance carrier.

[4] The 3rd Circuit in ***In re Avandia Marketing*** stated:

The plain text of the MSP private cause of action lends itself to [the] position that any private party may bring an action under that provision. It establishes "a private cause of action for damages" and places no additional limitations on which private parties may bring suit. § 1395y(b)(3)(A). Accordingly, we find that the provision is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer.

*Id*. at 359.

[5] Incidently, the named plaintiff in the 8th Circuit case, Douglas Stalley, was the same plaintiff in the 6th circuit case and several other cases as well. Mr. Stalley attempted to transform the MSPA into a *qui tam* statute and pursue claims despite the fact that he was not personally involved in any of the underlying claims he was seeking to obtain double damages penalties for.

Notwithstanding that fact, the 8th Circuit in ***Stalley v. Catholic Health Initiatives*** specifically held, "Section 1395y(b)(3)(A) grants the Medicare beneficiary a private right of action for double damages against an insurer or other primary payer that fails to pay the amounts it owes on the insured's behalf." *Id*. at 524.

F.3d 1146, 1152 (9th Cir. 2013);[6] and ***Humana Medical Plan v. Western Heritage Ins. Co.***, 832 F.3d 1229, 1234 (11th Cir. 2016).[7]

While it is true that the 6th Circuit in ***Bio-Medical*** appears to say that only Medicare could bring a suit against a tortfeasor,[8] this ruling was later backed away from by the 6th Circuit in ***Michigan Spine***. In that case, the 6th Circuit recognized that ***Bio-Medical***'s statements outside of the issues that were directly presented in the case were simply *dicta*. See ***Michigan Spine*** at 792.

In fact, the concurring opinion in ***Bio-Medical*** recognized that the very issue the Defendant is relying on to support its Motion to Dismiss was *dicta* and outside of the issues presented in ***Bio-Medical***. Circuit Judge Helene N. White, wrote:

> Thus, it is not clear, at least to me, from the language or structure of the Act that only Medicare (to the exclusion of healthcare providers) can sue primary plans whose liability is founded in tort. Because the question was not briefed, its resolution is not necessary to resolve this case, and statements addressing the question may be read as more than *dicta*, I would not decide the issue.

*Id*. at 299 - 300.

Furthermore, the most recent decision cited to by the Defendant, ***Gucwa v. Lawley***, No. 17-1823, 2018 WL 1791994 (6th Cir. Apr. 16, 2018), affirmed a dismissal of a MSPA claim not on the basis that Medicare was the only entity permitted to sue a tortfeasor under the MSPA but rather on the failing of the plaintiff's factual basis for Article III standing. The

---

[6] The 9th Circuit stated in ***Parra***, "The private cause of action allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans." ***Id***. at 1152.

[7] In ***Humana v. Western Heritage***, the 11th Circuit stated, "The MSP private cause of action is not a *qui tam* statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider." ***Id***. at 1234.

[8] See ***Bio-Medical*** at 292.

6th Circuit stated in that case, "Because [the plaintiff] did not allege personal financial loss in the original complaint or the two amended complaints, he has not established standing. Thus, we affirm the district court."

There is absolutely nothing in the statute to distinguish the type or class of individuals or entities who can bring a private right of action. The statute does not limit that provision to only Medicare, nor does it prohibit medical providers, medical plans, or Medicare Beneficiaries from pursuing such claims themselves. The only limitation would be Article III standing as was discussed in **Gucwa**.

There is likewise no distinction in the statute between liability insurance carriers, no-fault insurance carriers, workers compensation carriers, or self-insured entities. All of these are specifically deemed to be "primary plans." The Defendant, as a self-insured governmental entity, is a "primary plan" and subject to suit under the Private Right of Action when it fails to make a primary payment and requires a conditional payment to be made for a Medicare Beneficiary, including Mr. Osborne. Mr. Osborne, as a Medicare Beneficiary, who has set forth the factual basis for his Article III standing in his Amended Complaint, therefore, is permitted to bring this Private Right of Action claim.

**Demonstrated Responsibility and Comparative Fault**

The Defendant makes two final arguments in its Motion: 1) that there is no "failure to pay" because the mandate from the Tennessee Court of Appeal only recently was issued; and 2) that Mr. Osborne was found to be partially at fault for his injuries. Neither of these arguments are supported by the statute or case law.

The "demonstrated responsibility" provision can be found at 42 U.S.C. § 1395y(b)(2)(B)(ii). That section states:

> (ii) Repayment required
>
> Subject to paragraph (9), <u>a primary plan</u>, and an entity that receives payment from a primary plan, <u>shall reimburse</u> the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service ***if*** <u>it is demonstrated that such primary plan has or had a responsibility to make payment</u> with respect to such item or service. <u>A primary plan's responsibility for such payment may be demonstrated by a **judgment**, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means</u>. <u>If reimbursement is not made</u> to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, <u>the Secretary may charge interest</u> (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments). (Emphasis added).

This section of the statute requires a primary plan to make reimbursement, however, it does not alter or limit the double damages provision which is available because the primary plan failed to make a primary payment in the first place. Although it is arguable whether this section is even applicable to this case, assuming it is, the statutory requirement has been met.

The only requirement to "demonstrate responsibility" of the Defendant to be responsible to pay Mr. Osborne's medical expenses was met when he obtained a judgment against the Defendant. The statute does not require the judgment to be final and certainly does not require that judgment to pass through an appeals process with a final issuance of a mandate. In fact, the statute itself even contemplates settlement agreements in which a tortfeasor completely disavows liability as being sufficient to "demonstrate responsibility."

The Defendant is also failing to recognize that even in situations outside of tort liability, there can always been disputes. In the context of workmen's compensation claims, there can be disputes about whether the injury actually occurred within the scope of the employee's employment. There can be disputes as to the extent of the work related injury, what the reasonable treatment should be, or whether the injury is actually some pre-existing condition. Likewise, even in no-fault situations responsibility can be contested on the basis of causation.

The ability to contest responsibility for a claim, however, is not an element of the Private Right of Action. There is no distinction within the statute for claims brought under workmen's compensation plans, no-fault plans, or liability plans.

The Defendant is also confusing the double damages provision with the second part of the reimbursement section which provides for interest for failing to pay. Under that section, if a primary plan fails to make a reimbursement after notice has been given, then Medicare may charge interest on the amount that is not reimbursed by the primary plan.

The interest provision, however, is separate from the double damages provision. The double damages provision is a set amount which accrues the moment responsibility has been established.[9] The interest provision only applies in cases where payment is not made within sixty (60) days of notice of the claim and continues to accrue until reimbursement is made.

Likewise, there is no limitation contained in the statute for situations in which there was an allocation of comparative fault on the plaintiff who is a Medicare Beneficiary.

---

[9] The authority of Congress to establish damages for the failure of a primary plan to make a primary payment is no different than the authority of Congress to establish damages for attorney's fees for the successful plaintiff in a civil right's case. See 42 U.S.C. § 1988.

Again, the double damages provision of the Private Right of Action is essentially an additional element of damages established by Congress. It encourages and compensates Medicare Beneficiaries who pursue claims against primary plans which result in reimbursement of conditional payments. See *Stalley* at 916.

The Defendant's responsibility to pay double damages was established when Mr. Osborne obtained the judgment against it. Likewise, the fact that it continued to attempt to contest its liability after the judgment does not relieve it of its obligation to pay double damages because that provision provides for the double damages at the moment responsibility is established, not when a mandate is issued by an appellate court affirming the original judgment.

## CONCLUSION

For all of the forgoing reasons, the Court should deny the Defendant's Motion to Dismiss and permit the Plaintiff's claim to go forward. Mr. Osborne, as a Medicare Beneficiary and one who was directly impacted by the Defendant's failure to make a primary payment, is permitted to bring a claim pursuant to 42 U.S.C. § 1395y(b)(3)(A).

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY: /s/ James Bryan Moseley
    James Bryan Moseley, No. 021236
Attorneys for Plaintiff

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
615/ 254-0140
Fax: 615/ 244-2270

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record by electronic mail via the Court's electronic filing system:

J. Brooks Fox, Esq.
Post Office Box 196300
Nashville, Tennessee 37219
*Attorney for Defendant*

on this 8th day of June, 2018.

             /s/ James Bryan Moseley
             James Bryan Moseley